# Thomas, Appellant. *v.* Jacobs.

*Equity—Nuisance—Gasoline tank—Dwelling houses — Bill for injunction—Refusal.*

A bill in equity for an injunction to restrain the defendant from erecting a gasoline tank of large capacity in a small village in the neighborhood of a lumber yard and frame dwelling houses, was properly refused where the lower court found that the defendant intended to erect, equip and maintain the tank in such a manner that the storage of gasoline therein and withdrawal therefrom would not be unduly dangerous to life or property, and would not constitute a nuisance.

Argued May 9, 1916.   Appeal, No. 144, Jan. T., 1916, by plaintiff, from decree of C. P. Fayette Co., No. 766, In Equity, dismissing bill for injunction in case of M. R. Thomas v. T. J. Jacobs.   Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ.   Affirmed.

Bill in equity for injunction to restrain the erection of a gasoline tank.

VAN SWEARINGEN, P. J., filed the following findings of fact and conclusions of law:

The plaintiff filed a bill for an injunction to restrain the defendant from erecting and maintaining a gasoline tank on defendant's premises in which to store and from which to sell gasoline.   The plaintiff alleges that the maintenance of the gasoline tank on the location proposed will be dangerous to life and property on account of the liability of explosion, and prays the court to declare the same to be a nuisance.   The defendant, by answer filed, admits that it is his purpose and intention to erect and maintain a gasoline tank at the location alleged by the plaintiff, but he avers that the tank will be equipped with the most modern safety appliances, and denies that it will constitute a nuisance, or that it will be dangerous to the public or to the plaintiff.   When the bill

was filed we awarded a preliminary injunction, and the matter now is before us on a motion to continue the preliminary injunction until final hearing. From the bill, answer, exhibits, and competent testimony offered, we find the facts of the case to be as follows:

1. The residence of the plaintiff and the proposed location of the gasoline tank are in the mountain village of Thomasdale, in Henry Clay Township, adjoining the Somerset County line. Through the village runs the National Pike from Wheeling to Cumberland, on which there is much automobile travel, creating a demand for a public gasoline station at that point. The village comprises about thirty buildings, including nine dwelling houses. Nearly all the buildings in the village are on the northern side of the pike. The proposed location of the gasoline tank is on the opposite side of the pike, and across a creek running alongside of and parallel therewith. The only structures in close proximity to the proposed location of the gasoline tank, on that side of the pike, except the railroad tipple from which the gasoline will be unloaded from the railroad cars into the tank, are a few buildings belonging to the defendant, and they do not adjoin the proposed location of the tank.

2. The plaintiff is the owner of considerable property on the north side of the pike, including his private residence, a dwelling house and store building combined, several tenant houses, and a number of stables, warehouses and lumber yards. Thomasdale is a shipping point for lumber and railroad ties, and large quantities of lumber and ties are stored there. A line of the Baltimore & Ohio Railroad runs through the place, and two trains pass there each day, accompanied with considerable shifting of cars, and sparks are at times emitted from the engines, although the engines are equipped with spark arresters. A system of telegraph lines run along the south side of the pike. It is about eighty feet across the pike and the creek, from the nearest warehouse of the plaintiff to the proposed location of the gasoline tank,

and it is one hundred and thirty-two feet across the pike and the creek from the nearest dwelling house to the place where the tank is to be located. The railroad station is on the north side of the pike, two hundred and ninety feet from the tank location. The other buildings on the north side of the pike are located at various distances from the proposed location of the gasoline tank.

3. Gasoline is a liquid carbon or fuel. Its largest ingredient is carbon. In the open liquid gasoline is not explosive, but it gives off or generates a certain amount of gas, that is, an admixture of gasoline and air a substance containing more oxygen than gasoline, and this gas or vapor, when compressed or confined, is explosive. The amount of gas or vapor generated from gasoline depends to a great extent on the temperature of the surrounding atmosphere, more gas being generated under high temperatures than when the temperatures are low. To prevent danger of explosions in the storage and handling of gasoline precautions must be taken to permit the escape of the gas or vapor generated from the gasoline. The gas is lighter than air and will rise and disappear if allowed to go free.

4. The gasoline tank proposed to be erected by the defendant will be fastened upon a concrete base. The tank is of steel construction, is cylindrical in form, is twenty eight feet in length and eight and one-half feet in diameter, and has a capacity of ten thousand gallons. It will lie lengthwise upon the base, and will be filled by an intake pipe at one end. On top of the tank at either end will be an automatic safety valve two inches in diameter, the cover of which will be raised by pressure of gas from within the tank, allowing accumulations of gas thus to escape. In addition to these safety valves, there will be a manhole in the center of the top of the tank, with a diameter of sixteen inches, with a hinged cover which also will be raised automatically by an extraordinary pressure of gas from beneath. The tank is to remain in the open, without cover, which is the safer method of

maintenance, because it allows the escape and disappearance of the gas more freely from the tank. The gasoline will be withdrawn from one end of the tank, within a room constructed of iron, and neither the drawing faucet nor any of the fixtures on top of the tank will be within reach of any person except those in charge of the premises. When so erected, equipped, and maintained, the storage of gasoline in said tank and the withdrawal and sale of the same therefrom, at the proposed location will not be unduly dangerous to life or property and will not constitute a nuisance.

Our conclusion of law is, therefore, that the plaintiff is not entitled to the injunction for which he prays.

And now, June 1, 1915, the preliminary injunction heretofore granted is dissolved.

The lower court granted a preliminary injunction which it subsequently dissolved. Plaintiff appealed.

*Error assigned*, among others, was the decree of the court.

*E. C. Higbee*, of *Sterling, Higbee & Matthews*, with him *L. B. Brownfield* and *Elias Goldstein*, for appellant.

*W. J. Sturgis* and *S. J. Morrow*, for appellee, were not heard.

PER CURIAM, May 23, 1916:

The court below found that if the gasoline tank which the appellee intends to erect shall be equipped and maintained as he proposes to equip and maintain it, the storage of gasoline in it, and the withdrawal and sale of the same therefrom, will not be unduly dangerous to life or property, and will not constitute a nuisance. On this finding the appeal is dismissed at appellant's costs.